UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEROME D. OWENS,

               Plaintiff,               05-CV-0609[1]

      v.                            DECISION
                                          and ORDER
JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.
_____

## **INTRODUCTION**

Plaintiff Jerome D. Owens ("Owens" or "the plaintiff") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner" or "the defendant"), denying his application for Disability Insurance Benefits ("Disability") and Supplemental Security Income ("SSI"). On June 28, 2006, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On August 25, 2006, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that the Commissioner's decision is not supported by substantial evidence. Accordingly, the plaintiff's motion for judgment on the pleadings is granted and the defendant's motion for judgment on the pleadings is denied.

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court, Western District of New York, by Order dated April 5, 2007.

## BACKGROUND

Owens' application for SSI benefits was protectively filed on April 12, 2001 claiming that he was disabled by heart problems, back problems and seizures since April 9, 1996 (Tr. 164-70). The plaintiff's application was denied by notice dated October 15, 2001 (Tr. 157-59). The plaintiff appealed this decision and requested a hearing (Tr. 161). Following hearings held on June 5, 2003 and on August 12, 2003, the ALJ found that the plaintiff was not disabled (Tr. 18-64). The Social Security Appeals Council denied the plaintiff's request for review on June 28, 2005 the plaintiff commenced this action on August 25, 2005.

Owens testified that he could not work because he had difficulty walking due to gout (Tr. 38-39). His legs were swollen and he was in pain from his foot to the back of his neck (Tr. 38). In addition, the plaintiff claimed that his medications prevented him from functioning well (Tr. 40).

Owens has an 11th grade education with some vocational training in small engine repair (Tr. 139). He worked both part-time and full-time at a car wash until 1996. He served a one to three year jail sentence for armed robbery and was arrested several other times for assault and disorderly conduct.

The plaintiff suffers from a seizure disorder and rheumatic heart disorder (Tr. 102). He had mitral valve replacements in 1982 and 1996 (Tr. 101). A New York State Office of Temporary and

Disability Assistance form completed on June 24, 1999 by Dr. Jacob, a cardiologist, reflected that his doctor considered him limited in his ability to lift and carry up to 20 pounds, to stand and walk up to six hours per day, but had no limitations in the duration that he could sit (Tr. 107).  The plaintiff was also limited in his ability to work with machinery because of his seizure disorder (Tr. 107).  Another disability form completed by his primary care physician, Dr. Alicia Hermogenes, on October 27, 1999, also found that the plaintiff was limited in the amount he could lift and carry as well as how long he could stand and sit (Tr. 116-117).

In July 1999, Dr. Jorge Pardo conducted an independent medical examination of the plaintiff.  His report noted that the plaintiff was experiencing swelling of his legs and shortness of breath.  In addition, the plaintiff complained of low back pain accompanied by a dull ache (Tr. 119).  Dr. Pardo opined that the plaintiff could perform work with no heavy lifting, bending, prolonged sitting, prolonged standing and prolonged walking (Tr. 119).  Further, Owens was directed to avoid operating heavy machinery and to work in a non-stressful environment (Tr. 119).

An MRI of the lumbar spine was taken on June 15, 1999 and showed that Owens had "accentuated lordosis of the lumbosacral angle", "degenerative disc changes with mild bulging annulus at L4-L5 ... small posterior central disc protrusion at L5-S1", and

possible nerve root encroachment and foraminal stenosis at L6-S1 (Tr. 142).

The plaintiff was admitted to the hospital in March 2000 for shortness of breath and progressive swelling of the lower extremities (Tr. 336). Dr. Hermogenes found that the plaintiff had stopped taking his diuretic medication resulting in the need for hospitalization (Tr. 336). The plaintiff was discharged with prescriptions for Allopurinol, Coumadin, folic acid, Lanoxin, thiamine, Toprol, Lasix, Dilantin and Accupril (Tr. 337).

Again, in April 2001, the plaintiff was admitted to the hospital for possible heart failure (Tr. 345). An echocardiogram indicated that there was LV systolic function and adequate function in mitral valve prosthesis making congestive heart failure unlikely (Tr. 347). Because Owens was noncompliant with his medications, Dr. Hermogenes recommended that Owens consult with a cardiologist who should reemphasize the need for compliance (Tr. 346).

After discharge from the hospital, the plaintiff received nursing care in his home to monitor his Coumadin levels by blood draws (Tr. 404). The Nursing Care assessment dated April 9, 2001 showed that the plaintiff lived alone in his own house. He was described as able to care for himself including bathing, dressing and grooming (Tr. 405). Plaintiff was able to perform light housekeeping and prepare light meals (Tr. 406).

Dr. Rahman examined the plaintiff for an independent medical examination (Tr. 410-12). Owens was diagnosed with coronary artery disease, history of seizure disorder that was "well-controlled", hypertension, and back pain (Tr. 412). Dr. Rahman opined that the plaintiff had a "fair to poor" prognosis because he was a non-compliant and ill-informed plaintiff with multiple medical problems (Tr. 413). Dr. Rahman found that plaintiff should be able to do a job with minimal exertion but also stated that the plaintiff was greatly limited by coronary artery disease (Tr. 413).

In November 2003, Dr. Hermogenes completed a disability form in which she concluded that the plaintiff had "marked restrictions" on his daily activities and that he could not work (Tr. 154).

## **DISCUSSION**

### **I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The plaintiff and the defendant both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure.  Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.S. § 405(g) (2007).  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the

contents of the pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose.  <u>See</u> <u>Carroll v. Secretary of Health and Human Serv.</u>, 705 F.2d 638, 644 (2d Cir. 1981).  The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made."  <u>Id.</u>  Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted for the plaintiff.

**II.   STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."  42 U.S.C. § 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments).  An individual will only be considered "under a disability" if his impairment is so severe that he is both

unable to do his previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy.  §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country."  Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

- (i) if the claimant is performing substantial gainful work, he is not disabled;

- (ii) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled;

>   (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
>
>   (iv) if the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled;
>
>   (v) even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The ALJ in this case performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful employment since his alleged disability onset date of April 9, 1996; (ii) the plaintiff's impairments were considered "severe" under §§ 404.1520(c) and 416.920; (iii) the plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the plaintiff was unable to perform his past relevant work as a car wash attendant and small engine mechanic, and; (v) the plaintiff retained the residual functional capacity ("RFC") to perform "a significant range of sedentary work" (Tr. 23-24). This court holds that the ALJ's finding adverse to the plaintiff in step (v) of the evaluation process [that the plaintiff retained the

RFC to perform a significant range of sedentary work] was not supported by substantial evidence in the record as a whole.

### III. THERE IS SUBSTANTIAL MEDICAL EVIDENCE IN THE RECORD THAT THE PLAINTIFF'S RFC DOES NOT PERMIT HIM TO SUSTAIN EVEN SEDENTARY WORK ON A REGULAR AND CONTINUING BASIS.

At the administrative hearing, the ALJ erred in his hypothetical questions to the vocational expert when he failed to include the plaintiff's full range of medical conditions and resulting functional limitations. The plaintiff was diagnosed with obesity at Sheehan Memorial Hospital when he weighed in at 280 pounds (Tr. 296-97). His height and weight were also recorded by consultative examiner Dr. Q. Rahman as 5'9" and 264 pounds (Tr. 411). Dr. Rahman noted that the plaintiff's "straight leg raising test was ... quite limited and it may have been his obesity.... He is so obese that he may have ascites..." (Tr. 412).

Social Security regulations provide that:

> Obesity is a medically determinable impairment that is often associated with disorders of the cardiovascular system. Disturbance of this system can be a major cause of disability if you have obesity. Obesity may affect the cardiovascular system because of the increased workload the additional body mass places on the heart... Because the body would be working harder at rest, its ability to perform additional work would be less than would otherwise be expected. Thus, **the combined effects of obesity with cardiovascular impairments can be greater than the effects of each impairment considered separately.** We must consider any *additional and cumulative effects of obesity* when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a

> listed impairment), and when we assess your residual functional capacity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00I1. It was therefore incumbent upon the ALJ to fully consider the combined effect of the plaintiff's obesity *and* extensive pulmonary conditions when determining the plaintiff's residual functional capacity. The plaintiff had gout, severe edema, rheumatic heart disease that developed during childhood, was significantly overweight, had mitral valve replacements in 1982 and 1996, had severe chronic venous insufficiency in his lower extremities, was not able to heel/toe walk, experienced difficulty sitting up from the supine position, and had back pain resulting from degenerative disc disease (Tr. 102, 139-42, 148, 347). The plaintiff was on at least 11 different medications, had a rapid and irregular heartbeat, and presented with atrial fibrillation (Tr. 148-49). The plaintiff also suffered from congestive heart failure (Tr. 347).

Social Security regulations caution that an assessment should be made of the effect obesity has upon the individual's ability to sustain work on a "regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 02-1P. Substantial medical evidence shows that the plaintiff would require frequent breaks and time off. At the administrative hearing, the vocational expert testified, "Generally, in the first six months on a job... personal time off is really relegated to almost nil" (Tr. 62). Substantial evidence therefore supports the

conclusion that this plaintiff would not be able to sustain work on a "regular and continuing basis."  <u>See</u> SSR 02-1P.

## **CONCLUSION**

This Court finds that the ALJ's decision that plaintiff is not disabled within the meaning of the Act was not supported by substantial medical evidence in the record.  The record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose.  I therefore grant summary judgment in favor of the plaintiff and remand this matter to the Social Security Administration for immediate calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                            <u>s/Michael A. Telesca</u>
                                              MICHAEL A. TELESCA
                                    United States District Judge

DATED:     Rochester, New York
           August 13, 2007